UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID WILSON,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>GARDINER, et al.,<br><br>　　　　　　　　　Defendants. | Case No.: 17cv469-JLS-MDD<br><br>**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE RE: DEFENDANTS' MOTION TO DISMISS**<br><br>**[ECF No. 7]** |

　　　This Report and Recommendation is submitted to United States District Judge Janis L. Sammartino pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(c) of the United States District Court for the Southern District of California.

　　　For the reasons set forth herein, the Court **RECOMMENDS** that Defendants' Partial Motion to Dismiss be **GRANTED IN PART AND DENIED IN PART**.

　　　　　　　　　I.　　**PROCEDURAL HISTORY**

　　　Plaintiff David Wilson ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis.* (ECF Nos. 1, 3). On March 6, 2017, Plaintiff filed a Complaint pursuant to 42 U.S.C. § 1983. (ECF No. 1). The Complaint sets

forth various claims against six individuals working at the San Diego Central Jail Facility ("Central Jail") alleging that they violated his civil rights by: (1) retaliating against him in violation of the First and Eighth Amendment; (2) imposing cruel and unusual punishment against him in violation of the Eighth Amendment; (3) failing to provide Plaintiff his due process rights in violation of the Fourteenth Amendment; (4) intentionally inflicting emotional distress on him; and (5) negligently disregarding their duty owed to Plaintiff. (*See Id.*).

On August 21, 2017, Defendants Gardiner and Poirier filed a Motion to Dismiss the Complaint. (ECF No. 7). Defendants contend that: (1) Plaintiff's state tort claims must be dismissed because Plaintiff failed to submit a California Government Code damage claim before bringing his lawsuit; (2) Plaintiff's claims against Defendant Poirier must be dismissed because she had no personal involvement in any alleged violation; (3) Plaintiff's First Amendment claim must be dismissed because "the complaint does not allege any facts showing that [P]laintiff was engaged in a protected activity[;]" (4) Plaintiff's Fourteenth Amendment claim is precluded because it should have been brought under the Fourth Amendment; (5) Plaintiff's Eighth Amendment claim must be dismissed because Plaintiff did not allege that Defendants use of force was objectively unreasonable; and (6) the entire Complaint fails because Plaintiff did not first exhaust his administrative remedies, which is clear on the face of the Complaint. (ECF No. 7-1).

Plaintiff opposes the Motion to Dismiss on the grounds that: (1) he did file a claim with the Government Claims Board on September 3, 2016; (2) Defendant Poirier was the responding supervisor to the events giving rise to the lawsuit; (3) Plaintiff was engaged in his right to peacefully advocate for soup as a "necessity to Plaintiff's health and wellbeing[;]" (4) as a pretrial

2

detainee, Plaintiff may present a claim for excessive force during an unlawful cell extraction; (5) Defendants were malicious and sadistic in their use of excessive force; and (6) Plaintiff filed a complaint with the Citizen Law Enforcement Review Board ("CLERB"), who told Plaintiff they would file an administrative complaint on his behalf and any failure to exhaust his administrative remedies was due to state created impediment.

Defendants reply that Plaintiff's Complaint should be dismissed because: (1) Plaintiff brought his state tort claims up with the wrong entity; (2) the claims against Defendant Poirier do not allege she had direct involvement or issued direct orders during the incident; (3) no Doe defendants were named with respect to Plaintiff's Eighth Amendment claims; (4) the Fourteenth Amendment is unavailable to Plaintiff; (5) Plaintiff concedes that there is no excessive force claim in his Complaint; and (6) the CLERB is a board of volunteers unaffiliated with the County of San Diego. (ECF No. 21).

## II. **BACKGROUND FACTS**

The facts are taken from Plaintiff's Complaint and are not to be construed as findings of fact by the Court.

Plaintiff, at the time of the incidents giving rise to the Complaint, was an inmate at the San Diego County Central Jail Facility. (*See* ECF No. 1 at 3-5). Plaintiff states that he suffers from a psychiatric disability. (*Id.* at 5). Plaintiff's claims arise from a series of events that occurred on April 5, 2016, while he was a pretrial detainee. (ECF Nos. 1 at 2, 20 at 7). Plaintiff alleges that that day's lunch was served to inmates in their cells because the jail facility was on lockdown. (ECF No. 1 at 6). After Plaintiff received his sack lunch, he asked Defendant Gardiner if there was any soup available, to which Gardiner replied, "[t]here ain't no soup dumb-ass." (*Id.*). Plaintiff then

challenged Gardiner, both on being called a "dumb-ass" and because Plaintiff contended that there was available soup in the dayroom. (*Id.* at 7). Gardiner then placed a radio call to have Plaintiff's cell door opened and instructed Plaintiff to "[g]o down stairs and look in the soup container fuckin' stupid-ass!" Plaintiff declined the invitation. (*Id.*).

Plaintiff then alleges that Defendant Gardiner entered Plaintiff's cell and grabbed Plaintiff by his shirt collar with both hands in attempt to remove Plaintiff from the cell to verify that it was empty. (*Id.*). Plaintiff stepped back into the cell and asked "What's wrong with you?" Gardiner continued pursuing Plaintiff, throwing punches in Plaintiff's general direction. Plaintiff was struck in the eye, neck, and upper torso. (*Id.*).

Defendant then removed Plaintiff from his cell and handcuffed him. (*Id.*). Defendant Gardiner, while walking Plaintiff out of the housing unit and into the rotunda, began kicking Plaintiff in the calf and stepping on his heels and pant leg, forcing Plaintiff's pants to fall down. (*Id.* at 8). Because Plaintiff was unable to stop walking, and because he did not want to appear to be resisting Defendant Gardiner, Plaintiff was forced to walk out of his pants entirely. (*Id.*). Plaintiff was waked through the jail, wearing a torn shirt and no pants, to the medical unit where he was given a blood pressure test. Guards at the medical unit laughed at Plaintiff's state of undress. (*Id.*). Plaintiff asked Gardiner why he did this to Plaintiff, to which Gardiner responded "[i]t's not like I'm going to lose my job." (*Id.*).

Plaintiff was then taken to a dirty cell on the fourth floor. (*Id.* at 9). Plaintiff was still partially undressed and without shoes, and this new room had feces smeared on the wall and trash on the floor. Plaintiff had no bed linens or cleaning supplies. (*Id.*). Plaintiff asked passing guards for cleaning supplies, replacement clothes, and linens, all of which were refused.

Plaintiff alleges that at this time he began experiencing a great deal of physical anxiety and psychiatric post-traumatic and emotional distress, as well as nausea. (*Id.*). Plaintiff began sweating and experienced an elevated heart rate and rapid breathing. (*Id.*). After being held in the dirty cell for over two hours, Plaintiff stopped Defendant Joe Doe #1 and again requested clothing and supplies, saying "I['d] rather be dead than live like this." (*Id.* at 10). Joe Doe #1 immediately ordered Plaintiff to "cuff up" telling Plaintiff that he interpreted Plaintiff's statement as a suicidal declaration. (*Id.*). Plaintiff repeatedly told Doe #1 that he did not want to kill himself, that he simply did not want to be housed in unsanitary conditions.

Plaintiff then turned around and put his wrists outside of the still-closed and locked cell to be cuffed. (*Id.*). As Doe #1 was cuffing Plaintiff, he dug the jagged edge of the handcuff into Plaintiff's right hand above his thumb, causing excruciating pain and instant bruising. Plaintiff then asked for a sergeant. Doe #1 refused Plaintiff's request and pepper sprayed Plaintiff, causing him to choke and gag. (*Id.*). Plaintiff was told to cuff up again while he repeatedly asked for a sergeant. (*Id.*). Plaintiff was then pepper sprayed a second time causing Plaintiff's skin and eyes to burn. (*Id.*).

Defendant Poirier arrived, stating "[t]hat's a hell-of-a-lot of pepper spray, and it's making me choke." (*Id.* at 11). Poirier then told Plaintiff that he had better exit his cell, or corrections officers were going to have to extract him. Plaintiff explained that he was being falsely accused of being suicidal and that he simply did not want to be housed in a filthy cell. Defendant Poirier told Plaintiff to exit the cell and that the two of them would then talk about it. (*Id.*). Plaintiff left the cell without further incident and was immediately transported to a suicide/safety cell, while still covered in pepper spray. (*Id.* at 12). Plaintiff was released by a psychiatric doctor within

5

twenty-four hours. Plaintiff reported experiencing burning for several days after the incident. (*Id.*).

## III. **LEGAL STANDARD**

"A Rule 12(b)(6) motion tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (internal quotations omitted). The pleader must provide the Court with "more than an un-adorned, the-defendant-unlawfully harmed-me accusation." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements will not suffice." *Id.* "Although for the purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [a court is] not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (internal quotations omitted).

A *pro se* pleading is construed liberally on a defendant's motion to dismiss for failure to state a claim. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002) (citing *Ortez v. Washington Cnty.*, 88 F.3d 804, 807 (9th Cir. 1996)). The *pro se* pleader must still set out facts in his complaint that bring his claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

A court "may not supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents,* 673 F.2d 266, 268 (9th Cir. 1982). Nor may a plaintiff supply missing elements in his opposition. *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the

complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.") (emphasis in original)).

A *pro se* litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the deficiencies cannot be cured by amendment. *See Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987).

### IV. **DISCUSSION**

#### A. **State Tort Claims**

Defendants argue that Plaintiff's state law claims for assault and battery, intentional infliction of emotional distress, and negligence are barred because Plaintiff failed to submit a California Government Code damages claim before bringing his lawsuit. (ECF No. 7-1 at 3-4). Plaintiff argues that he filed a Government Board claim on September 3, 2016, and has not yet received a response. (ECF No. 20 at 4). Plaintiff attached his Government Claims Form with the California Victim Compensation and Government Claims Board as an attachment in his opposition to Defendants' Motion to Dismiss. (*Id.* at 21-36).

Compliance with California's Government Tort Claims Act ("the Act") is a prerequisite to filing a state law claim against a state official. A claim under the Act must be presented to the Victim Compensation and Government Claims Board (Board) within six months of the alleged tortious conduct. CAL. GOV'T CODE §911.2. Compliance with the Tort Claims Act is an element of the cause of action, *State of Cal. V. Superior Court (Bodde),* 32 Cal. 4th 1234, 1240 (2010), is required, *Mangold v. California Public Utilities Com'n,* 67 F.3d 1470, 1477 (9th Cir. 1995), and "failure to file a claim is fatal to a cause of action." *Hacienda La Puente Unified School Dist. of Los Angeles v. Honig,* 976 F.2d 487, 495 (9th Cir. 1992).

Here, Defendants argue that Plaintiff's obligation was not met because

7

17cv469-JLS-MDD

he failed to bring his government claim to the County. In their Motion, misidentified the claim Plaintiff filed as a complaint with the Law Enforcement Review Board. (ECF No. 7-1 at 4). Defendants corrected this error in their reply. (ECF No. 21 at 2-3). Defendants, however, point to no law requiring Plaintiff to file his claims with the county. Further, Defendants do not outline the procedure available to Plaintiff in order to file a claim with the county, merely arguing that the state tort claims must be dismissed.

Defendants argue that Plaintiff's supporting library log entry dated September, 2017 contradicts Plaintiff's contention that he filed his government claim in September of 2016, however that is insufficient grounds on which to dismiss Plaintiff's state tort claims, at this stage in the proceedings. The Court **RECOMMENDS** Defendants' Motion to Dismiss the state tort claims of Plaintiff's Complaint be **DENIED**.

## B. Claims Against Defendant Poirier

Defendants contend that the claims against Sgt. Alma Poirier (sued as "Sergeant Poiter") should be dismissed because she had no personal involvement in any alleged violation of Plaintiff's constitutional rights. (ECF No. 7-1 at 4-5). Plaintiff argues that as the responding supervisor, it was Defendant Poirier's responsibility to ensure that Plaintiff was properly decontaminated after Plaintiff was pepper sprayed. (ECF No. 20 at 5). Defendants argue Defendant Poirier cannot be held personally liable under § 1983 for alleged violations caused by a subordinate absent her direct participation or specifically issuing directions to a subordinate regarding the alleged deprivation. (ECF No. 21 at 3).

To be liable under § 1983, a person acting under color of state law must cause the plaintiff to suffer the violation of a constitutional right. 42 U.S.C.A.

§ 1983. "A person 'subjects' another to the deprivation of a constitutional right ... if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (citing *Sims v. Adams*, 537 F.2d 829 (5th Cir. 1976)). Thus, the plaintiff must allege that each of the defendants committed some act, or failed to act in a particular way, that was the cause of the purported constitutional injury. *Williams v. Bennett*, 689 F.2d 1370, 1385 (11th Cir. 1982). "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988).

Section 1983 of the Civil Rights Act does not authorize a plaintiff to bring a cause of action based on respondeat superior liability. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978) ("[T]he fact that Congress did specifically provide that A's tort became B's liability if B 'caused' A to subject another to a tort suggests that Congress did not intend § 1983 liability to attach where such causation was absent."). State officials are subject to suit in their personal capacity if "they play an affirmative part in the alleged deprivation of constitutional rights." *King v. Atiyeh*, 814 F.2d 565, 568 (9th Cir. 1987), overruled on other grounds by *Lacey v. Maricopa Cty.*, 693 F.3d 896, 925 (9th Cir. 2012). "A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).

"The required causal connection between supervisor conduct and the deprivation of a constitutional right is established either by direct personal

9

participation or by setting in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict constitutional injury.'" *Little v. Pena*, No. C 94-0671 MHP, 1994 U.S. Dist. LEXIS 9068, at *9 (N.D. Cal. June 29, 1994) (quoting *Bergquist v. Cty. of Cochise*, 806 F.2d 1364, 1370 (9th Cir. 1986)); see *K'Napp v. Adams*, CASE NO. 1:06-cv-01701-LJO-GSA (PC), 2009 U.S. Dist. LEXIS 38682, at *9 (E.D. Cal. May 7, 2009).

Here, Plaintiff's Complaint does not allege sufficient factual allegations against Defendant Poirier to survive a motion to dismiss. The Complaint alleges that Poirier's involvement began after Plaintiff had been pepper sprayed. Plaintiff then indicates that Poirier advised Plaintiff that he would be wise to cooperate with the correctional officers and gave Plaintiff an opportunity to discuss his concerns. The Complaint does not allege any personal involvement in the pepper spraying incident by Defendant Poirier, or any personal involvement in the deprivation of Plaintiff's constitutional rights, other than asserting a theory of respondeat superior with respect to Defendant Gardiner and Doe #1. Further, Plaintiff does not plead any facts that indicate Poirier knew of or acquiesced to the wrongful conduct of others. Therefore, Plaintiff states no claim to which he can receive relief against Defendant Poirier and the Court **RECOMMENDS** Defendants' Motion to Dismiss be **GRANTED** without prejudice as to Defendant Poirier.

C. **First Amendment Retaliation Claim**

In claim one, Plaintiff alleges that Defendant Gardiner retaliated against Plaintiff in violation of the First Amendment. (ECF No. 1 at 15). In the Motion to Dismiss, Defendants argue Plaintiff fails to state a claim for a First Amendment violation because Plaintiff does not sufficiently allege facts demonstrating that Plaintiff was engaged in a protected activity. (ECF No. 7-1 at 6). In his objection, Plaintiff argues that he was "engaged in his First

Amendment right of advocating peacefully" in inquiring about soup and that Defendants' actions "chilled" Plaintiff's action. (ECF No. 20 at 6-7).

The First Amendment protects against "deliberate retaliation" by prison officials against an inmate's exercise of his right to petition for redress of grievances. *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989). Such conduct is actionable even if it would not otherwise rise to the level of a constitutional violation because retaliation by prison officials may chill an inmate's exercise of legitimate First Amendment rights. *Thomas v. Carpenter*, 881 F.2d 828, 830 (9th Cir. 1989). A prisoner suing prison officials for retaliation must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action did not advance legitimate penological goals. *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995); *Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994); *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985).

The Ninth Circuit has set forth five basic elements for a viable claim of First Amendment retaliation: "(1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009) (citing *Rhodes v. Robinson*, 408 F.3d 559, 567-68 n.11 (9th Cir. 2005)).

Here, the Court finds that Plaintiff's Complaint fails to allege that he was engaged in protected conduct. Plaintiff did not allege that his soup request was due to a specific religious meal plan or approved medical treatment, for example. Plaintiff may be correct in his assertion that he was "peacefully advocating" for soup as part of his lunch, however, this does not establish that eating soup or inquiring about soup is protected conduct giving

rise to a First Amendment retaliation claim. For this basic reason, the Court **RECOMMENDS** Defendants' Motion to Dismiss claim one of Plaintiff's Complaint be **GRANTED** without prejudice.

**D.     Excessive Force Claims**

In claims one and two, Plaintiff alleges that Defendant Gardiner subjected Plaintiff to cruel and unusual punishment in violation of Plaintiff's Eighth Amendment rights. (ECF No. 1 at 15-16.) In claim three, Plaintiff alleges the same events deprived Plaintiff of his rights without due process in violation of the Fourteenth Amendment as to all Defendants. (*Id.* at 16).

Defendants argue that the Complaint fails to state an excessive force claim under the Eighth Amendment because the allegations do not indicate that Defendants' behavior was objectively unreasonable. (ECF No. 7-1 at 7). Further, Defendants argue that Plaintiff's Fourteenth Amendment claim is duplicative, as Plaintiff's claims of excessive force are properly pled under Fourth Amendment. (ECF No, 7-1 at 6).

In addressing an excessive force claim brought under § 1983, the analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force. *Graham v. Connor*, 109 S. Ct. 1865, 1871 (1989). The specific constitutional right is determined by the plaintiff's custodial status. *Pierce v. Multnomah County*, 76 F.3d 1032, 1042 (9th Cir. 1996). The Fourth Amendment governs claims of excessive force during a seizure of a free citizen. *Graham*, 109 S. Ct. at 1871. In the Ninth Circuit, this protection lasts until arraignment. *Pierce*, 76 F.3d at 1043. The Due Process Clause of the Fourteenth Amendment protects pretrial detainees from excessive force that amounts to punishment. *Graham*, 109 S. Ct. at n.10 (citing *Bell v. Wolfish*, 99 S. Ct. 1861, 1871-74 (1979)). After conviction, the Cruel and Unusual Punishment Clause of the Eighth Amendment

governs the use of force against a prisoner. *Whitley v. Albers*, 106 S. Ct. 1078, 1084 (1986).

In *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015), the Supreme Court clarified the applicable standards governing pretrial detainees' excessive force claims under the Fourteenth Amendment. The Supreme Court granted certiorari in that case to resolve a disagreement among the circuits regarding whether § 1983 claims brought by pretrial detainees must satisfy a subjective standard, that takes into account the defendant's state of mind, or only an objective reasonableness standard. *Id.* at 2471-72. The Supreme Court held that "the appropriate standard for a pretrial detainee's excessive force claim is solely an objective one." *Id.* at 2473. "[A] pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id.*

"[O]bjective reasonableness turns on the 'facts and circumstances of each particular case.'" *Kingsley*, 135 S. Ct. at 2473 (quoting *Graham*, 109 S. Ct. at 1872). Objective reasonableness must be assessed from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight. *Id.* The court must also account for the legitimate interests that stem from the government's need to manage the facility in which the individual is detained. *Id.* The following non-exclusive factors "may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.* However, unlike a convicted prisoner proceeding under the Eighth Amendment, a pretrial detainee does

not need to show that the force was applied maliciously and sadistically for the purpose of causing harm. *Id.* at 2475-76.

At this stage in the proceedings, Plaintiff's well-pleaded allegations must be viewed in the light most favorable to him. He alleges that he was challenging Defendant Gardiner's name calling when Gardiner grabbed Plaintiff by the collar and attempted to force Plaintiff to verify for himself that there was no soup, and then began punching him. He alleges that he was repeatedly kicked and forced to jettison his pants because he was unable to continue being escorted by Gardiner with his pants falling down. Additionally, he indicates that Doe #1, without provocation, twice pepper sprayed Plaintiff while he was complying with a request to cuff up. Plaintiff asserts that this incident caused high levels of stress and anxiety, exacerbating his already present mental health issues, humiliation, and physical pain.

Plaintiff's allegations are sufficient to support a plausible inference that Defendant Gardiner used force for the malicious and sadistic purpose of causing harm, rather than for the purpose of maintaining or restoring discipline, because, if taken as true, Plaintiff's allegations establish that at the time force was applied, Plaintiff could not reasonably be perceived as a threat. Defendants' counter that Plaintiff was confrontational about soup availability and that his behavior "adversely impacted management of the facility." (ECF No. 7-1 at 7). Defendants do not indicate how Plaintiff's soup request was disruptive or how pepper spraying Plaintiff twice while he was complying with an order was in furtherance of maintaining or restoring discipline. As stated above, at this stage in the proceedings Plaintiff's allegations must viewed in the light most favorable to him. When these allegations are taken as true, there was no justification for the use of any

14

force – let alone justification for Defendant Gardiner to enter his cell and repeatedly hit Plaintiff – over a soup request, or for Doe #1 to twice pepper spray Plaintiff while he was complying with the order to cuff up.

Accordingly, Plaintiff's allegations establish beyond a speculative level that the force applied by Defendant Gardiner was not de minimis. Plaintiff therefore states a cognizable claim and the Court **RECOMMENDS** that the Motion to Dismiss claims one and two for excessive force under the Eighth Amendment be **GRANTED** with prejudice and claim three for excessive force under the Fourteenth Amendment **DENIED** as to Defendant Gardiner.

**E. Failure to Exhaust Administrative Remedies**

Defendants argue Plaintiff's failure to exhaust his administrative remedies is clear on the face of the Complaint and therefore Plaintiff is precluded from bringing this lawsuit in its entirety. (ECF No. 7-1 at 8-9).

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is "mandatory." *Porter v. Nussle*, 534 U.S. 516, 524 (2002) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)); *McKinney v. Carey*, 311 F.3d 1198, 1200–01 (9th Cir.2002). Failure to exhaust is "an affirmative defense the defendant must plead and prove." *Jones v. Bock*, 549 U.S. 199, 204 (2007). "In a typical PLRA case, a defendant will have to present probative evidence [in a Rule 56 motion for summary judgment] ... that the prisoner has failed to exhaust administrative remedies under § 1997e(a)." *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir.2014) (en banc). However, "in ... rare cases where a failure to exhaust is clear from the face of the complaint, a defendant may successfully move to dismiss under

15

Rule 12(b)(6) for failure to state a claim." *Albino*, 747 F.3d at 1169 (citing *Jones*, 549 U.S. at 215–16; *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir.1984) (per curiam) ("[A]ffirmative defenses may not be raised by motion to dismiss, but this is not true when, as here, the defense raises no disputed issues of fact."); *Aquilar–Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir.2007) ("[O]nly in rare cases will a district court be able to conclude from the face of the complaint that a prisoner has not exhausted his administrative remedies and that he is without a valid excuse.")).

Here, Defendants argue that is it clear from the face of the Complaint that Petitioner has not exhausted his administrative remedies. Therefore, Defendants move to dismiss pursuant to Rule 12(b)(6). However, Plaintiff alleges that he "has satisfied all exhaustions required for issues raised in this lawsuit." (ECF No. 1 at 15.) Thus, it is not evident from the face of the Complaint that Plaintiff failed to exhaust his administrative remedies. Moreover, the Court cannot consider the evidence Plaintiff presented in his opposition to the Motion to Dismiss to find a failure to exhaust. (ECF No. 20 at 15-16). *Schneider v. California Dep't of Corrections*, 151 F.3d 1194, 1197 (9th Cir.1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the Complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendants' motion to dismiss."). Therefore, the Court finds this case is not among the "rare cases" where dismissal for failure to exhaust is appropriate under Rule 12(b)(6), and would be more proper as a Rule 56 motion for summary judgment. Accordingly, the Court **RECOMMENDS** that Defendant's Motion to Dismiss for failure to exhaust administrative remedies be **DENIED**.

///

///

## V. CONCLUSION

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that:

1) Defendants' Motion be **DENIED** as to Plaintiff's state tort claims (claims four and five);

2) Defendants' Motion be **GRANTED** without prejudice as to all claims against Defendant Poirier (claims three and five);

3) Defendants' Motion be **GRANTED** without prejudice as to Plaintiff's First Amendment Retaliation claim against all Defendants (claim one);

4) Defendants' Motion be **GRANTED** with prejudice as to Plaintiff's Eighth Amendment claims against all Defendants (claims one and two);

5) Defendants' Motion be **DENIED** as to Plaintiff's Fourteenth Amendment Claim (claim three); and

6) Defendants' Motion be **DENIED** as to Plaintiff's failure to exhaust his administrative remedies.

This Report and Recommendation will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. §636(b)(1). Any party may file written objections with the court and serve a copy on all parties by **February 26, 2018**. The document shall be captioned "Objections to Report and Recommendation." Any reply to the objections shall be served and filed by **March 5, 2018**.

The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated: February 12, 2018

Hon. Mitchell D. Dembin
United States Magistrate Judge