# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID WILSON,<br><br>                      Plaintiff,<br><br>v.<br><br>CORPORAL GARDINER, et al.,<br><br>                      Defendant. | Case No.: 17-cv-0469-JLS-MDD<br><br>**REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>**[ECF No. 30]** |

This Report and Recommendation is submitted to United States District Judge Janis L. Sammartino pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(c) of the United States District Court for the Southern District of California.

For the reasons set forth herein, the Court **RECOMMENDS** Defendant's Motion for Summary Judgment be **GRANTED**.

## I. PROCEDURAL HISTORY

David Wilson ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis, with a civil complaint filed pursuant to 42 U.S.C. § 1983. (ECF No. 1, 3). In his Complaint, Plaintiff set forth various claims against six individuals working at the San Diego Central Jail Facility ("Central Jail")

alleging that they violated his civil rights by: (1) retaliating against him in violation of the First and Eighth Amendment; (2) imposing cruel and unusual punishment against him in violation of the Eighth Amendment; (3) failing to provide Plaintiff his due process rights in violation of the Fourteenth Amendment; (4) intentionally inflicting emotional distress on him; and (5) negligently disregarding their duty owed to Plaintiff. (*See Id.*). Following a Motion to Dismiss, only Plaintiff's Fourteenth Amendment claim against Deputy Francis Gardiner remains. (ECF No. 26).

On August 17, 2018, Defendant filed a motion for summary judgment. (ECF No. 30). Plaintiff was served with a Klingele/Rand notice and given until September 26, 2018, to file his opposition. (ECF No. 31). As of the date of this Report and Recommendation, Plaintiff has not filed a response.

## II. FACTUAL BACKGROUND

Defendant has produced evidence of the following facts.[1] Defendant Francis Gardiner ("Defendant") was working as a Fifth Floor Security Deputy at Central Jail on April 5, 2016. (ECF No. 30-2 at ¶1, 2). That day, Defendant was distributing lunch meals to the inmates in Module 5B, which was on lockdown. (*Id.* at ¶4). Due to the lockdown, inmates were served in their cells through the food flaps in the cell doors. (*Id.*). With the help of an "inmate trustee," Defendant was handing out boxed lunches including sandwich materials and fruit, as well as soup that was poured into small cups from a large container. (*Id.* at ¶5). The soup ran out before Defendant began lunch service on the second floor of Module 5B. (*Id.*).

Plaintiff was one of three inmates housed in cell 17. (*Id.* at ¶6). After

---

[1] These facts are undisputed because Plaintiff has not filed an opposition or put forth any evidence disputing them.

2

delivering lunches to cell 17, Defendant was moving to cell 15 when Plaintiff yelled out, calling Defendant lazy for not giving him any soup. (*Id.*). Defendant believed that other inmates could hear Plaintiff and noticed that they were becoming upset. Defendant believed that Plaintiff was beginning to incite the other inmates over the unavailability of soup. (*Id.* at 7).

Defendant then returned to cell 17 to defuse tensions. (*Id.* at ¶8). Because of the cell door, Defendant was unable to communicate easily with Plaintiff and therefore Defendant called the tower and had the door to cell 17 opened. (*Id.*). Defendant explained that the soup had run out and offered Plaintiff the opportunity to see for himself which Plaintiff declined. (*Id.* at ¶9, 10). Plaintiff then yelled "Fuck you" at a volume that could be heard by everyone else in the Module. (*Id.* at ¶10).

Module 5B is an incentive-based module used as a reward for good behavior and inmates who violate rules or regulations can be removed. (*Id.* at ¶11). Following Plaintiff's outburst, Defendant made the decision to remove Plaintiff. (*Id.*). Defendant believed that Plaintiff had violated rules requiring inmates to treat staff members civilly and not threaten, assault, or attempt to intimidate any other inmate or staff; as well as the regulation prohibiting aggressive or boisterous activity. (*Id.*). Defendant ordered Plaintiff to exit the cell and go to the common area on the first floor, Plaintiff refused and moved further into the cell. (*Id.* at ¶12). Defendant repeated his order for plaintiff Plaintiff to go to the common area and again Plaintiff, standing very close to Defendant, yelled "fuck you." (*Id.* at ¶13, 16). Defendant recognized Plaintiff's agitation and combative language as "pre-assaultive indicators" and further believed that he was in a vulnerable position. (*Id.* at ¶14, 15). Defendant based his assessment of his position on (1) Defendant's location near the second floor railing, given that he has

previously seen inmates attempt to "leverage deputies over the railing to fall onto the hard concrete floor," (2) Defendant's inability to close the cell door on Plaintiff to prevent a physical altercation, and (3) Defendant being the only deputy in the module at the time of this interaction. (*Id.* at ¶15).

Defendant then attempted to grab Plaintiff by his shirt to pull him from the cell in order to handcuff him and remove him from the module. (*Id.* at ¶16). Plaintiff slapped at Defendants hands. (*Id.*). Plaintiff kept slapping at Defendant's hands and at one point slapped Defendant's face in an attempt to resist. (*Id.*). Defendant did not strike or punch Plaintiff, and limited his contact to grabbing, pushing, and pulling in an attempt to remove Plaintiff from the cell. (*Id.*)

Defendant was able to eventually remove Plaintiff from the cell, locking the cell door behind them, and then ordered Plaintiff to face the wall to handcuff him. (*Id.* at 17). Plaintiff refused and "took a bladed stance," which Defendant perceived as a fighting position. (*Id.* at ¶18). Defendant, using an open hand, pushed Plaintiff on the chest several times, to move Plaintiff toward the stairs "to prevent him from getting footing for a fighting stance." (*Id.*). It was Defendant's intention to render Plaintiff unable to charge at Defendant. (*Id.*).

At this time, five other deputies rushed into the module, and Plaintiff became compliant. (*Id.* at ¶19). Defendant, with assistance, handcuffed Plaintiff. (*Id.*). Plaintiff was escorted down the stairs and out of Module 5B. Defendant never kicked at Plaintiff's legs, ankles, or calves. (*Id.* at ¶20). Plaintiff's pants sagged during this interaction and as a result by the time Plaintiff reached the bottom of the stairs, his pantlegs "had extended over his socks," however Defendant did not intentionally force Plaintiff out of his pants while walking. (*Id.*).

4

# III. LEGAL STANDARD

## A. Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure authorizes the granting of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The standard for granting a motion for summary judgment is essentially the same as for the granting of a directed verdict. Judgment must be entered, "if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "If reasonable minds could differ," however, judgment should not be entered in favor of the moving party. *Id.* at 250-51.

The parties bear the same substantive burden of proof as would apply at a trial on the merits, including plaintiff's burden to establish any element essential to his case. *Liberty Lobby*, 477 U.S. at 252; *Celotx v. Catrett*, 477 U.S. 317, 322 (1986); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). The moving party bears the initial burden of identifying the elements of the claim in the pleadings, or other evidence, which the moving party "believes demonstrates the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323; see also *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *S.E.C. v. Seabord Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982). More than a "metaphysical doubt" is required to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The burden then shifts to the non-moving party to establish, beyond the pleadings, that there is no genuine issue for trial. *See Celotex*, 477 U.S. at 324. To successfully rebut a properly supported motion for summary judgment, the nonmoving party "must point to some facts in the record that demonstrate a genuine issue of material fact and, with all reasonable inferences made in the plaintiff['s] favor, could convince a reasonable jury to find for the plaintiff[]." *Reese v. Jefferson School Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir. 2000) (citing Fed. R. Civ. P. 56; *Celotex*, 477 U.S. at 323; *Liberty Lobby*, 477 U.S. at 249).

While the district court is "not required to comb the record to find some reason to deny a motion for summary judgment," *Forsberg v. Pacific N.W. Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988), *see also Nilsson v. Louisiana Hydrolec*, 854 F.2d 1538, 1545 (9th Cir. 1988), the court may nevertheless exercise its discretion "in appropriate circumstances," to consider materials in the record which are on file but not "specifically referred to." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001). However, the court need not "examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could be conveniently found." *Id.*

In ruling on a motion for summary judgment, the court need not accept legal conclusions "cast in the form of factual allegations." *Western mining Council v. Watt*, 643 F. 2d 618, 624 (9th Cir. 1981). "No valid interest is served by withholding summary judgment on a complaint that wraps nonactionable conduct in a jacket woven of legal conclusions and hyperbole." *Vigliotto v. Terry*, 873 F.2d 1201, 1203 (9th Cir. 1989).

Moreover, "[a] conclusory, self-serving affidavit, lacking detailed facts

and any supporting evidence, is insufficient to create a genuine issue of material fact." *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997). Nevertheless, "the district court may not disregard a piece of evidence at the summary stage solely based on its self-serving nature." *Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497-98 (9th Cir. 2015) (finding plaintiff's "uncorroborated and self-serving" declaration sufficient to establish a genuine issue of material fact because the "testimony was based on personal knowledge, legally relevant, and internally consistent.").

A district court may not grant a motion for summary judgment solely because the opposing party has failed to file an opposition. *Cristobal v. Siegel*, 26 F.3d 1488, 1494-95 & n.4 (9th Cir. 1994). A court may, nonetheless, "grant an unopposed motion for summary judgment if the movant's papers are themselves sufficient to support the motion and do not on their face reveal a genuine issue of material fact[.]" *Williams v. Santa Cruz Cnty. Sheriff's Dep't*, 234 F. App'x 522, 523 (9th Cir. 2007) (citing *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993)).

## IV. DISCUSSION

### A. Fourteenth Amendment Excessive Force Claim

Plaintiff claims Defendant exhibited unnecessary force and failed to provide "an environment free of malicious and sadistic conduct." (ECF No. 1 at 3). Defendant argues, however, that given the circumstances, his actions were reasonable and as a result summary judgment is proper. (ECF No. 31-1 at 6).

Because Plaintiff is a pretrial detainee alleging excessive force in violation of the Fourteenth Amendment, his claim arises under the Due Process Clause of the Fourteenth Amendment. *See Kingsley v. Hendrickson*, 135 S.Ct. 2466 (2015); *see also Graham v. Connor*, 490 U.S. 386, 395 n.10

7

1 (1989) (citing *Bell v. Wolfish*, 441 U.S. 520, 535-39 (1979)); *Gibson v. County of Washoe, Nev.*, 290 F.3d 1175, 1197 (9th Cir. 2002) ("The Due Process clause protects pretrial detainees from the use of excessive force that amounts to punishment."). In *Kingsley*, the Supreme Court held that a pretrial detainee bringing an excessive force claim "must show only that the force purposely or knowingly used against him was objectively unreasonable" rather than prove "a subjective standard that takes into account defendant's state of mind." *Kingsley*, 135 S.Ct. at 2472-73.

"[O]bjective reasonableness turns on the facts and circumstances of each particular case. *Id.* at 2473 (internal quotation omitted). Objective reasonableness must be assessed from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight. *Id.* The court must also account for the legitimate interests that stem from the government's need to manage the facility in which the individual is detained. *Id.* The following non-exclusive factors may bear on the reasonableness or unreasonableness of the force used:

> The relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.* However, unlike a convicted prisoner proceeding under the Eighth Amendment, a pretrial detainee does not need to show that the force was applied maliciously and sadistically for the purpose of causing harm. *Id.* at 2475-76.

The only act at issue here against Defendant—that he physically removed Plaintiff from his cell after Plaintiff began challenging him over the availability of soup—may have been unkind or harsh, but is not sufficient to

8

establish a constitutional violation. "Not every malevolent touch by a prison guard gives rise to a federal cause of action." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (internal citation and quotation marks omitted).

Here, in arguing that the use of force was appropriate, Defendant notes that the Use of Force Guidelines allow hands-on-control as an appropriate response to verbal non-compliance and resistance and that Defendant's use was a good faith effort to maintain and restore discipline. (ECF No. 30-1 at 6). Further, Defendant contends that the force applied after Plaintiff's verbal incitement and refusal to leave the cell would be considered "low level" and did not include fist strikes, OC spray, or striking weapons. (*Id.*). Plaintiff pleads no physical injury from Defendant's attempt to push him toward the stairs, only claiming embarrassment from being escorted in his shirt and underwear as well as anxiety and distress stemming from later events that have been dismissed from this case. (*Id.* at 7).

The signed declaration filed with Defendant's motion indicates that Defendant's use of force was appropriate given the circumstances. Plaintiff was not only engaging in behavior likely to incite other inmates in the Module, he also actively resisted Defendant's efforts to de-escalate the situation. Additionally, Defendant used a minimal amount of force in an effort to ensure that Plaintiff did not charge at him after Plaintiff adopted what Defendant considered to be a fighting stance.

Plaintiff has not supported his contention that Defendant's force was unnecessary or that Defendant's behavior was unreasonable. Further, Plaintiff has failed to meet his burden of coming forward with "specific facts showing there is a genuine issue for trial." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586-87.

Accordingly, this Court **RECOMMENDS** that summary judgment of

Plaintiff's excessive force claim be **GRANTED**.

**B. Qualified immunity**

Defendant raises qualified immunity as an alternative basis for dismissal of Plaintiff's claim. Defendant contends that he is entitled to qualified immunity because there is no clearly established authority that would find his conduct unconstitutional. (ECF No. 30-1 at 7-8).

Qualified immunity shields government officials performing discretionary functions from liability for civil damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "In determining whether an officer is entitled to qualified immunity, we consider (1) whether there has been a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct." *C.V. by & through Villegas v. City of Anaheim*, 823 F.3d 1252, 1255 (9th Cir. 2016) (quoting *Lal v. California*, 746 F.3d 1112, 1116 (9th Cir. 2014)). The Court may decide which of the two prongs to address first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Here, as discussed above, there is no constitutional violation. Accordingly, both Defendants are entitled to qualified immunity.

Based on the lack of any evidence of a Fourteenth Amendment violation and Defendant's entitlement to qualified immunity on this claim, the Court **RECOMMENDS** that the motion for summary judgment be **GRANTED**, and that this action be **DISMISSED**.

## V. CONCLUSION

For the reasons outlined above, IT IS **RECOMMENDED** that the District Court issue an Order: (1) Approving and Adopting this Report and Recommendation; and (2) **GRANTING** Defendants' motion for summary

judgment.

**IT IS HEREBY ORDERED** that any written objections to this Report must be filed with the Court and served on all parties no later than **February 19, 2019**. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objection shall be filed with the Court and served on all parties no later than **February 26, 2019**. The parties are advised that the failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *See Turner v. Duncan*, 158 F. 3d 449, 455 (9th Cir. 1998).

**IT IS SO ORDERED**.

Dated: February 5, 2019

Hon. Mitchell D. Dembin
United States Magistrate Judge